SAMUEL M. HICKMAN, APPELLEE, V. CHARLES JONES, APPELLANT.

FILED MARCH 28, 1930. No. 26931.

*T. F. Neighbors* and *Paul H. Eaton,* for appellant.

*Mitchell & Gantz, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

GOOD, J.

This is an action to quiet title to certain lands in Morrill county, in which plaintiff had decree as prayed, and defendant has appealed.

From the record in this case it appears that plaintiff holds record title in fee simple to the northeast quarter, the east half of the northwest quarter, the northeast quarter of the southwest quarter, and the north half of the southeast quarter of section 21, and the west half of the northwest quarter of section 22, all in township 21 north, range 47 west, according to the original United States government survey. Plaintiff also holds lease from the state of Nebraska to section 16, in said township and range. Defendant holds title by patents from the United States government to the west half of section 15, lots 1 and 2 in section 21, and lots 1 and 2 in section 22, all in township 21 north, range 47 west, according to "the official plat of the survey of the said land, returned to the general land office by the surveyor-general." Plaintiff contends that the lands to which he holds title by deed and lease embrace much of the land claimed by defendant, notwithstanding the latter holds patents from the United States government for the lands to which he asserts title.

The controversy between the parties arises in part from the fact that there were two government surveys of said township which differed materially, and also as to whether a certain monument was the southeast corner of section 16, in said township, according to the original government sur-

vey. The original survey by the United States government was made in about 1879. The plat of that survey was filed in the general land office at Washington, D. C., and a copy thereof filed in the United States land office at Alliance, Nebraska. This plat indicates that said township was rectangular in form and was approximately six miles square. It later developed that said township was not, in fact, six miles square but was irregular in shape, being but five and one-fourth miles from east to west on the north boundary line and six miles from east to west on the south boundary line. The survey was imperfect, and many of the original section corners and quarter-section corners were either not properly marked by monuments or, if so, such monuments had become obliterated. This situation no doubt induced an act of congress in 1899, authorizing and directing a new survey of the township to be made. This survey was made about 1900 by one Alt and was not a retracement of the original but was an independent survey. A plat of this survey was also filed in the general land office and a copy thereof in the United States land office at Alliance. This differed very materially from the original survey. Several years subsequent to the Alt survey the United States government caused to be made a resurvey or retracing of the original government survey, and a plat thereof was filed in the general land office at Washington and a copy thereof in the United States land office at Alliance. On this plat all of the original section corners and quarter-section corners that could be found are indicated. The plat is a true representation of the original survey according to the monuments thereof and indicates the true boundaries of the township, as well as the interior section outlines, at least to all that part of the township where the original government corners were found. We have prepared a plat which shows the original government survey, as retraced, and the Alt survey, one superimposed upon the other. Thereon the original government survey, as retraced, is indicated by light lines, and the Alt survey by heavy lines. The section corners and quarter-section corners of the original survey,

so far as could be found, are indicated upon this plat by the mark "o." Such plat is here reproduced.

Township No. 21 North of Range No. 47 West of the Sixth Principal Meridian

THE ALT INDEPENDENT SURVEY SHOWN BY HEAVY BLACK LINES.
THE ORIGINAL U. S. SURVEY SHOWN BY LIGHT BLACK LINES.
ORIGINAL CORNERS INDICATED THUS:⊙

The act of congress authorizing the resurvey contained a proviso as follows: "That nothing herein contained shall be so construed as to impair the present *bona fide* claim of any actual occupant of any of said lands so occupied to the amount of land to which, under the law, he is entitled; and provided further, that said resurvey shall in no manner affect the rights of *bona fide* occupants of any of said lands to the land so occupied to the amount which said occupants are entitled to receive from the government."

The general land office issued to Alt. special instructions for the execution of the survey and called attention to this provision of the act of congress. The instructions contained, among other things, the following:

"This office understands the 'actual occupant of any of said lands,' to refer to the *present owners* of claims, whether they now occupy and reside on their claims or elsewhere, and that the entire quoted phrase applies to and embraces lands acquired under the timber culture laws or by pre-emption or homestead entry, and to claims purchased from other parties who may have acquired their title to the lands by any proper legal process. * * *

"*Duties and Authority of Surveyors.* You will properly survey all claims within the townships covered by your contract, in accordance with its provisions and these special instructions. * * * All claims, having boundaries defined by existing corners at their ends, which for the sake of brevity are here designated 'marked boundaries,' will remain unchanged; they will be surveyed as they are marked on the ground, and at least one corner of each claim will be connected by course and distance with the nearest corner of the public surveys, township, section, or quarter-section corner, as the case may be.

"All claim boundaries not marked by natural or artificial corners will be established on true *north and south* or *east and west* lines, in order to simplify cases and limit complications.

"The corners formed by intersection of fences on the boundaries of a claim will be considered corners in the sense the term is herein employed. * * *

"*Claims marked by one corner only.* * * * Survey the boundaries of the claim for area, that is to say, make the boundaries * * * to inclose in rectangular form, the patented area."

There are other elaborate detailed instructions which it is unnecessary to here quote.

When Alt came to make his survey he found one Wagoner, plaintiff's grantor, in possession of certain lands which he claimed by mesne conveyances from the original patent-

ees. The land claimed by Wagoner was the same that plaintiff now claims as being in sections 21 and 22, but did not correspond with the Alt survey. Thereupon, as directed, Alt made a "claim survey" of the lands claimed by Wagoner, and designated the claim survey as sections 52, 53, and 54 upon the plat of the township, as surveyed by him. The original patents for the lands so claimed by Wagoner called for 440 acres. Sections 52, 53, and 54, as surveyed by Alt, likewise embrace 440 acres, so that plaintiff's grantor was, by the Alt survey, accorded the exact number of acres which he claimed, although he was claiming the land under the same designation in sections 21 and 22 as does the plaintiff in this action.

It will be observed, by reference to the foregoing plat, that the north line of sections 52 and 54 is south of the north line of sections 21 and 22, according to the Alt survey. The evidence indicates the distance to be 48 rods. The United States patents, under which defendant claims title to the lands, described as lots 1 and 2 in section 21 and lots 1 and 2 in section 22, adjoin on the north sections 52 and 54, and must have been issued by the United States government with reference to the Alt survey, since there are no lots 1 and 2 in either of said sections, according to the original survey. Where the United States government has caused to be made two or more surveys of its public lands, in disposing of any of them it may describe the lands according to any of such surveys.

In June, 1917, plaintiff acquired from Wagoner title by deed to the lands to which he asserts title in this action. In that deed this land is described in the same manner as asserted by plaintiff in his petition, and contains this further dual description: "But which according to the Alt survey, and embracing the same territory claim-lined by him in A. D. 1900, under contract with the commissioner of the general land office pursuant to an act of congress authorizing the same, and since held by such claim lines and which is designated on the official plat of his survey of said township 21 N. of range 47, as sections * * * 52, 53, and 54," etc. This plainly indicates that plaintiff and his grant-

or both considered the two descriptions identical. It also appears from the record that plaintiff has since placed several mortgages upon the land in which he has given the same dual description of the land; thus showing that he considers sections 52, 53, and 54, according to the Alt survey, as being the identical lands which he claims under descriptions as subdivisions of sections 21 and 22, according to the original government survey. Moreover, plaintiff and his grantor have inclosed the lands, known as sections 52, 53, and 54, on the east, south and west boundaries thereof and a large part of the north boundary. Plaintiff and his grantor have held and possessed these lands in this manner since 1897, and the possession and title have been recognized both by the government and by plaintiff and his grantor as containing 440 acres of land, and it has been recognized that such land is identical with that known and described in the Alt survey as sections 52, 53, and 54. Plaintiff does not assert ownership in fee to more than 440 acres, but he contends that his deeded lands are bordered on the north by section 16 of the original government survey, and that there cannot exist any such lands as represented on the plat of the Alt survey as lots 1 and 2 in section 21 and lots 1 and 2 in section 22. From the evidence it is clear that the north boundary of the land owned by plaintiff in fee simple is the north boundary of sections 52 and 54 of the Alt survey.

A number of witnesses have testified that the point shown on the plat as the southeast corner of section 15 of the original government survey was known and recognized as being the southeast corner of section 16 of that survey. That this monument was a section corner of the original survey is amply proved. That the original entrymen on the lands now embraced in sections 52 and 54 in good faith believed that monument to be the southeast corner of section 16 is made clear from the fact that it was from this corner that they located their lands immediately to the south. They believed the line extending west and east from this monument to be the north line of sections 21 and 22, respectively. They made entry on these lands and described

them as being in sections 21 and 22, and later proved up and received from the United States government patents for lands described as being in those sections. The evidence further shows that this monument is but two miles from the east boundary of the township and that, reckoning a section as being a mile, it is four miles east of the west boundary of the township. It is demonstrated that the monument was, in fact, the southeast corner of section 15, instead of the southeast corner of section 16.

Plaintiff advances the proposition that it is "competent to prove the location of a corner of a public survey by reputation, by the location of land of old settlers, by declaration of deceased persons as to corners and boundaries, by evidence of common repute of the location of public boundary lines and by hearsay testimony." For the sake of argument, the proposition of law may be admitted as sound. But plaintiff argues therefrom that the monument in question must be regarded as the southeast corner of section 16. We think this does not follow. The rule is that such evidence is competent to prove that such a monument is a corner of a public survey, and, while some of the authorities cited may tend to support the contention of plaintiff, the point involved in those cases was whether a certain monument was a corner established by a government survey, and not whether such a monument was the corner of one section or another section. In any event, general reputation among early residents and settlers that a certain monument was a corner of a particular section must give way when it is clearly shown that they were mistaken as to the particular section of which it was a corner.

The evidence in the instant case, that the monument in question was the southeast corner of section 16, was based very largely upon the fact that the original entrymen to the deeded land, now owned by plaintiff, found the monument and reported it to be the southeast corner of section 16, and from that it obtained the reputation of being the southeast corner of section 16. The evidence clearly shows that these entrymen were mistaken, and that the corner in question

was and is the southeast corner of section 15 of the original government survey.

It follows that the deeded land of plaintiff does not embrace any of the land claimed by the defendant, and that defendant is not claiming title or right of possession to any of the land embraced in sections 52, 53, and 54. It is also clear that plaintiff's leasehold interest in section 16 is located one mile west of the corner which he believed was the southeast corner of section 16, and that it does not embrace any of the land for which defendant holds patents. Section 16, as will be observed from the plat contained in this opinion, is designated by the Alt survey as tract 63, and none of the land to which defendant asserts title is included in that section or tract. It is conceded that, in the enabling act for the admission of Nebraska into the Union as a state, the government granted to the state sections 16 and 36 in each township, if such sections had not been otherwise disposed of prior to the admission of the state. The state's title to section 16 rests upon the original government survey. Any subsequent survey by the United States government could not affect or change the title to or boundaries of the land originally granted to the state. It follows that plaintiff was not entitled to a decree quieting title in himself as against the defendant.

Plaintiff has pleaded in his reply that the entire subject-matter has been heretofore adjudicated, and relies on *res judicata* of the controversy herein. In his reply he sets out a copy of the opinion by this court in the case of *Hickman v. Jones*, 106 Neb. 466. The opinion, itself, shows that that was an action in replevin to determine the right of possession to a quantity of hay. The title to lands was not involved nor litigated in that action, notwithstanding reference may have been made thereto in the opinion. Since title to land was not and could not have been litigated in the replevin action, the judgment in that case could not have related to the title to the lands. In fact, the judgment entered in that action is not pleaded, nor does it appear in the evidence.

A judgment in a prior suit between the same parties will not be a bar to a subsequent action unless it is shown by the record, or by clear and satisfactory evidence, that the same issue presented in the subsequent action was involved in the prior suit. *Hamilton Nat. Bank v. American Loan & Trust Co.,* 72 Neb. 81. The plea of *res judicata* is not well taken.

From what has been said, it follows that plaintiff was not entitled to a decree quieting his title as against the defendant. The judgment of the district court is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.